T.C. Memo. 1997-132


UNITED STATES TAX COURT


MARK D. AND SHELDON C. MORGAN, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15590-94.                    Filed March 13, 1997.


<u>Lewis R. Wiener</u>, for petitioners.

<u>Daniel J. Parent</u>, for respondent.


MEMORANDUM OPINION


JACOBS, <u>Judge</u>:  By separate notices of deficiency, both dated May 27, 1994, respondent determined the following deficiencies and accuracy-related penalties with respect to petitioners' Federal income taxes:

|       |            | Accuracy-Related Penalty |
| Year  | Deficiency | Sec. 6662(a)             |
| ----- | ---------- | ------------------------ |
| 1988  | $ 1,351    | ---                      |
| 1989  | 19,046     | $3,809                   |
| 1990  | 16,430     | 3,286                    |
| 1991  | 16,436     | 3,287                    |

Pursuant to an amended answer, filed October 10, 1995, respondent seeks a $9,864 increase in the deficiency for 1988, so that the total amended amount of the proposed deficiency for that year is $11,215.

Following concessions by petitioners, the issues for decision are:

(1) The proper characterization (loans, as contended by petitioners, or wages, as contended by respondent) of monthly payments received by petitioner Mark D. Morgan from Robert Randall Co. We hold that such payments are wages, includable in petitioners' income.

(2) Whether petitioners are entitled to claimed employee business expense deductions (for 1989, 1990, and 1991) for automobile expenses. Because of petitioners' failure to provide sufficient substantiation, we hold they are not.

(3) Whether the increased deficiency asserted by respondent for 1988 is time-barred. We hold that it is not.

(4) Whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1989, 1990, and 1991. We hold they are.

All section references are to the Internal Revenue Code for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

### General Findings

Petitioners, husband and wife, resided in Carmichael, California, at the time they filed their petition challenging respondent's determinations. Petitioners timely filed joint Federal income tax returns for each of the years under consideration. On June 1, 1992, petitioners were issued a refund of $1,351 for tax year 1988. The refund resulted from petitioners' request for a tentative refund based upon a claimed net operating loss carryback from 1991.

For convenience and clarity, we have combined additional findings of fact and opinion with respect to each issue.

### Issue 1. Characterization of Advances From Robert Randall Co.

Petitioner husband Mark D. Morgan (hereinafter referred to as petitioner) has been involved for many years in real estate activities, particularly the construction of real estate. In June 1988, he began working for Robert Randall Co. which is in the business of developing and managing apartment complexes. Previously, petitioner had been employed by Gibraltar Community

Builders, Inc. (Gibraltar). During 1987, petitioner received wages from Gibraltar totaling $123,671; for the first 5 months of 1988, petitioner received wages from Gibraltar totaling $66,382.

On June 21, 1988, petitioner and Robert Randall, the president and apparently the sole or at least the majority shareholder[1] of Robert Randall Co., entered into an agreement (called and hereinafter referred to as the Sunbelt Project Working Agreement), pursuant to which petitioner agreed to be the regional manager responsible for locating, acquiring, and developing properties in the Sacramento area for multifamily housing on behalf of partnerships or other entities to be controlled by Robert Randall or his affiliate. In accordance with the provisions of the Sunbelt Project Working Agreement, beginning in June 1988, and throughout all years under consideration, Robert Randall Co. made monthly payments, labeled "advances", to finance petitioner's living expenses. In addition to these advances[2], Robert Randall Co. paid wages to petitioner. FICA (Social Security tax) was withheld on these wages, but Federal income taxes were not.

The amount of wages and advances paid to petitioner were as follows:

---

[1] The record is not clear on this point. Robert Randall testified that he was "the chief executive officer, the president, the chairman, and the owner" of Robert Randall Co.

[2] The use of the word "advances" is not meant to give a legal characterization of the monthly payments.

| Year | Amount of Wages | Amount of Advances |
|------|-----------------|--------------------|
| 1988 | $11,008 | $40,950 |
| 1989 | 18,000 | 75,600 |
| 1990 | 18,000 | 84,600 |
| 1991 | 18,000 | 87,600 |

The advances include the following amounts designated as an automobile allowance:

| 1988 | $1,300 |
|------|--------|
| 1989 | 2,400 |
| 1990 | 5,550 |
| 1991 | 6,600 |

The advances were paid on a monthly basis as follows:

| June 1988 | $3,150 |
|-----------|--------|
| July 1988-Mar. 1990 | 6,300 |
| Apr. 1990-Dec. 1991 | 7,300 |

Robert Randall Co. did not withhold for income tax or FICA tax on the advances.

As of the date of trial, petitioner had not repaid any of the advances. The advances were not evidenced by notes, nor was collateral given. Nor did Robert Randall Co. inquire into petitioner's ability to repay the advances. There were no specific repayment terms or fixed maturity dates. Rather, the advances were to be charged against petitioner's share of profits of partnerships to be formed between petitioner and Robert Randall.

Respondent determined that the advances petitioner received from Robert Randall Co. constitute taxable compensation for services. Petitioners claim that the advances were nontaxable loans. Except for 1988, petitioners bear the burden of proving

their characterization of the advances. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933). If petitioners meet their burden of proof, then the advances are not includable in their income. See <u>Falkoff v. Commissioner</u>, 62 T.C. 200, 206 (1974); <u>Arlen v. Commissioner</u>, 48 T.C. 640, 648 (1967). For 1988 only, respondent bears the burden of proving the advances constitute taxable income inasmuch as that is a new matter, first raised in respondent's amended answer. Rule 142(a).

Whether the advances should be characterized as loans or payments for services is a factual determination. <u>Beaver v. Commissioner</u>, 55 T.C. 85 (1970); <u>Haber v. Commissioner</u>, 52 T.C. 255 (1969), affd. 422 F.2d 198 (5th Cir. 1970). For a payment to constitute a loan, at the time the funds are transferred, the recipient must intend to repay the advance, and the transferor must intend to enforce repayment. <u>Haag v. Commissioner</u>, 88 T.C. 604, 615-616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). Further, the obligation to repay must be unconditional and not contingent upon a future event. <u>United States v. Henderson</u>, 375 F.2d 36, 39-40 (5th Cir. 1967); <u>Bouchard v. Commissioner</u>, 229 F.2d 703 (7th Cir. 1956), affg. T.C. Memo. 1954-243. An intent to repay a purported loan by the performance of services in the future does not result in the exclusion of the underlying funds from the recipient's income. <u>Beaver v. Commissioner</u>, <u>supra</u> at 91. In such a case, the purported loan proceeds are nothing more than an advance salary or other payment

for services which are includable in the recipient's income when received.

Various objective factors are used in deciding whether an advance payment is a loan or compensation. See <u>Haag v. Commissioner</u>, 88 T.C. at 616 n.6., for a listing of some of these factors.  In the instant case, the following factors lead us to conclude that the advances petitioner received from Robert Randall Co. should be characterized as compensation, rather than loans:

1.   The advances were from an employer to an employee.

2.   Petitioner's wage compensation from his previous employment with Gibraltar was significantly higher than the Form W-2 wages petitioner received from Robert Randall Co.

3.   The monthly advances began as soon as petitioner started working for Robert Randall Co.

4.   The amount of the advances was pre-set.

5.   The advances were paid in regular monthly intervals.

6.   There were no set repayment terms or fixed maturity date at the time the advances were made.

7.   There was no stated interest.

8.   Petitioner had not repaid any of the advances as of the date of trial.

9.   There was no indication that petitioner could repay the advances from his own resources.

10. The transferor did not inquire into petitioner's financial status before making the advances.

11. There was no collateral for the advances.

12. Petitioner would not have taken the position with Robert Randall Co. if the latter had not paid him a substantial amount in addition to his Form W-2 salary.

13. The value of services petitioner rendered was far in excess of his Form W-2 salary.

14. Robert Randall Co. could not have hired someone with petitioner's qualifications for the amount of Form W-2 salary paid to petitioner.

15. The transferor would have caused the advances to petitioner to stop if petitioner had stopped providing services.

Based on our determination that the advances were not loans, but rather represent compensation for services, the advances are includable in petitioner's income in the year paid.

Issue 2. Automobile Expenses

On petitioners' tax returns for 1989, 1990, and 1991, petitioners claimed employee business expense deductions with regard to petitioner's purported business use of an automobile, as follows:

| Year | Amount |
|------|--------|
| 1989 | $4,375 |
| 1990 | 5,200 |
| 1991 | 4,950 |

Respondent disallowed these deductions.

At trial, petitioner failed to provide any evidence or substantiation (such as a log or diary) for the claimed expenses

other than his own testimony that he "feels" that he drove approximately 20,000 miles a year for business purposes.

Section 274(d) provides that no deduction shall be allowed with respect to any listed property (as defined in section 280F(d)(4)) unless the taxpayer substantiates by adequate records or sufficient evidence corroborating the taxpayer's own statement the amount of such expense, the time and place of the expense, the business purpose of the expense, and the business relationship of the expense. A passenger automobile is considered listed property. Sec. 280F(d)(4).

Because petitioner failed to satisfy the record keeping or other substantiation requirements of section 274(d), petitioners are not entitled to the claimed employee business deductions for automobile expenses for 1989, 1990, and 1991.

Issue 3. Statute of Limitations Defense

The next issue for consideration is whether respondent is time-barred from amending her answer to increase the amount of the deficiency for 1988 by recharacterizing the advances petitioner received in 1988 as wages.

For 1988, petitioners reported a total gross income of $82,034, consisting of wages ($77,388), interest ($3,318), and unemployment compensation ($1,328). In addition, they reported the sale of their home, but excluded the gain therefrom pursuant to section 1034. The reported selling price for the home was $180,000; the excluded gain was $14,050.

Petitioners did not report in 1988 the $40,950 received in advances from Robert Randall Co. As previously discussed, the $40,950 constitutes compensation, which is includable in petitioner's gross income.

Section 6501(e) provides: "If the taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed."  Further, section 6503(a) provides for the suspension of the running of the period of limitations if a proceeding is placed on the docket of this Court, from the issuance of the deficiency notice until a decision of the Court becomes final.

In the instant case, petitioners filed their 1988 return on April 15, 1989.  The notice of deficiency for 1988 was issued on May 27, 1994.  The petition requesting a redetermination of respondent's deficiency determination for 1988 was filed on August 30, 1994.  Sec. 6503.

The $40,950 which petitioners failed to include in their 1988 income is in excess of 25 percent of the amount of gross income stated on the return.[3]  Thus, on the date respondent's notice of

---

[3]  Even if the sale of petitioners' home is taken into account, for sec. 6501(e) purposes, the $14,050 capital gain on the sale, not the $180,000 gross sales price, is used in
(continued...)

deficiency for 1988 was issued, the 6-year period of limitations had not yet expired, and the omitted $40,950 could have properly been included in respondent's deficiency notice. Accordingly, respondent is not time-barred from asserting an increased deficiency in her amended answer with respect to the omitted $40,950 of wage income.

## Issue 4. Accuracy-Related Penalty

Respondent determined an accuracy-related penalty under section 6662(a) for 1989, 1990, and 1991. Section 6662 imposes a penalty equal to 20 percent of the portion of an underpayment that, among other things, is a substantial understatement of income tax.

An understatement of income is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1). The deficiencies here determined are substantial understatements.

The accuracy-related penalty does not apply with respect to any portion of the underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). Petitioners claim that they relied on their accountant to correctly prepare their returns. Reliance by a taxpayer on the advice of a qualified adviser will constitute reasonable cause and good faith

---

³(...continued)
computing the gross income reported on the return. See Burbage v. Commissioner, 82 T.C. 546, 558 (1984), affd. 774 F.2d 644 (4th Cir. 1985).

if, under all of the facts and circumstances, the reliance was reasonable and the taxpayer acted in good faith.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Considering all the facts and circumstances presented, we do not find persuasive petitioner's defense that he relied on his accountant to correctly prepare his returns.  The accountant did not testify.  And we found petitioner's self-serving testimony in this regard to be not credible.  In conclusion, we hold that petitioners are liable for the accuracy-related penalty on the entire underpayment for 1989, 1990, and 1991.

To reflect the foregoing and because of the increased deficiency for 1988,

Decision will be entered under Rule 155.